### In re B. J. R. CO., Inc.
### No. 22891.

District Court, E. D. New York.
Nov. 15, 1933.

Louis I. Rothenberg, of Brooklyn, N. Y., for trustee, for the motion.

Silberman & Steinfeld, of Brooklyn, N. Y., for Aimee R. Klein and Naystar Realty Corporation, for the motion.

A. Louis Kiebel, of New York City (Herman G. Robbins, of Brooklyn, N. Y., of counsel), for Stella Kronisch, opposed.

BYERS, District Judge.

This is a motion to confirm the report of the referee in bankruptcy directing an attorney (Shlefstein) to turn over to the trustee the sum of $500.00 held in escrow, and the trustee to pay $750.00 to one Klein, although no petition by her appears in the papers.

This petition was filed on June 23, 1933, and was answered on August 4th by one Kronisch, who had deposited the said $500.00 in escrow, and by the attorney holding the said sum, on August 7, 1933, and who made no claim thereto.

The matter came before the referee on these papers, and such proceedings were had before him on September 19, 1933, that he filed a report consisting of findings of fact and conclusions of law, dated October 16, 1933, now before the court.

The facts are somewhat unusual and should be stated.

On or about August 5, 1932, Kronisch entered into a contract with the bankrupt for the purchase of property therein described, at a price of $10,150.00, of which $500.00 was paid upon signing, and $3,400.00 was to be paid on the closing of title, in cash, and the balance of $6,250.00 by taking the property subject to a mortgage.

Title was to close on August 24, 1932, at the office of Shlefstein, the attorney for the seller, and the said $500.00 down payment by the terms of the contract was "to be deposit-

ed with Abram Shlefstein in escrow." The terms of the said escrow are not contained in the findings made by the referee, but are thought to be undisputed, namely (as stated in the Kronisch answer):

"August 5th, 1932.

"The undersigned on closing of contract between B.J.R.Co.Inc. and Stella Kronisch does hereby acknowledge receipt from Stella Kronisch of the sum of $500. by check subject to collection and which the undersigned agrees to hold in escrow and agrees not to turn over said sum to B.J.R.Co.Inc. until the actual closing of the title to premises located at the northeast corner of Quentin Road and Stuart Street as provided for in the aforesaid contract of sale between B.J.R.Co. Inc. and Stella Kronisch.

"In the event that the said B.J.R.Co.Inc. is unable to deliver title, then said monies is (sic) to be returned to Stella Kronisch.

"Abram Shlefstein."

On a day not disclosed in these papers but prior to that fixed for the closing of title, an involuntary petition in bankruptcy against the vendor was filed, and at that time a mechanic's lien foreclosure action, affecting the premises, was pending in the Supreme Court of the state of New York; a receiver in bankruptcy was appointed in this court, who is now the trustee.

Whether there was an adjournment of title closing on the deed day does not appear, but under date of September 30, 1932, a written stipulation was signed on the part of the bankrupt, the purchaser, and the attorney for the bankrupt, adjourning the closing to November 30, 1932, which stipulation contained the following:

"In consideration of such adjournment it is further agreed that the purchase price be reduced by the sum of $350."

On that day (September 30th) a lease was entered into between the receiver and Kronisch for an indefinite term beginning October 1, 1932, under which Kronisch went into possession; the rental reserved was $600.00 per year, payable $50.00 a month in advance; the lease recited that the tenant deposited with the landlord the sum of $500.00 as security, "which said sum shall be returned to the tenant after the time fixed as the expiration of the term herein, provided the tenant has fully and faithfully carried out all of the terms, covenants and conditions on her part to be performed."

The tenant agreed to pay the carrying charges, supply the heat and the hot water at her own cost and expense, coal for the premises, janitor services and insurance "with the except (sic) of taxes, assessments and interest on the first mortgage."

Paragraph 27 recites the making of the contract to purchase the premises, the adjournment of the closing, the entry into possession by the tenant, and continues:

"and after further securing the seller of the performance of the contract on the part of the purchaser, the tenant herein, the tenant has this day deposited under this lease, the sum of Five Hundred ($500.00) Dollars as security for the faithful performance of this lease, and as further security to indemnify the seller upon the full and faithful performance of the contract."

Paragraph 28: "It is understood and agreed that this sum of Five Hundred ($500.) Dollars this day deposited shall at the time of closing of title be delivered and turned over to the seller, credit given to the purchaser, the tenant herein, upon the purchase price."

Paragraph 29: "In the event the tenant is unwilling to consummate the said contract and take title, then and in that event the said sum of Five Hundred ($500.00) Dollars shall be forfeited."

Paragraph 30: "In the event the seller shall be unable to deliver a good and marketable title, then and in that event, the Tenant upon vacating the premises after receiving thirty days notice and having left the premises in good condition, the said security of Five Hundred ($500.00) Dollars shall, after the Tenant has vacated the building, be returned to the Tenant herein, who is also the purchaser under said contract."

It seems clear that the parties intended that, if Kronisch should perform her contract of purchase, the $500.00 deposited under the lease should be credited to her on the purchase price of the property, and, if she should be unwilling to perform, the $500.00 deposit should be forfeited by her.

She remained in the premises until early in June, 1933, but paid rent for the months of October and November, only, and was in default for the months of December, 1932, to June, 1933, inclusive.

Apparently the foreclosure of the mechanic's lien, above referred to, proceeded to judgment, and the plaintiff in that action acquired title from the referee; at least all the lawyers seem to agree on the foregoing,

although there is no precise testimony on the subject, and during April, 1933, Kronisch was notified, but not by the trustee, to appear at the office of attorneys other than the one named in the contract of sale, to take title to the premises from or through the purchaser from the referee in foreclosure.

This notice led to certain discussions wherein Kronisch offered to take title from the then apparent owner if certain repairs were made which she specified, and if the purchase price named in the contract were further to be reduced; Kronisch refused to take title except under such circumstances, and this the referee finds to have been a default on her part, and he states (finding 7): "That the damages resulting from the failure of Stella Kronich to perform her contract of purchase of premises and her default in the payment of seven months rent under the lease is in excess of One Thousand ($1000.00) Dollars deposited by her with Abram Shlefstein, and the Trustee."

. . A careful examination of the proceedings before the referee fails to disclose any basis for that finding, for there was no testimony offered on the subject of damages.

Equally important is the fact that no testimony was offered which would sustain the conclusion that the default was really that of the purchaser. In other words, there was no showing that a good and marketable title was tendered to Kronisch by or on behalf of her vendor, and that she rejected it.

There is nothing in the record to the effect that the foreclosure proceedings in the state court were properly instituted or legally conducted, and that good and marketable title was conveyed by the referee to the purchaser at the referee's sale, and thus the conclusion that Kronisch was in default is unsupported. What amounts to adjudication of default on the part of a vendee should be based upon something more than a presumption of regularity of legal proceedings, where the vendee is asked to accept title, not from the vendor, but from the successor in title, through such proceedings as are herein recited.

The significance of the foregoing seems to have been realized, for the attorney for the purchaser in foreclosure states that his client sought to sell to Kronisch through a new contract which was offered to her in June or July of 1933.

Kronisch made a down payment of $500.00 on her contract with the bankrupt, and she was entitled to the tender of a good and marketable title to the property in question, or to get her $500.00 back.

With reference to the $500.00 deposit under the lease, it is clear that she forfeited $350.00 by failing to pay seven months' rent, but why the remaining $150.00 should not be returned to her by the trustee, is not made to appear.

The referee's report refers to the fact that, in January, 1933, the trustee, under order granted by the referee, sold all of the right, title and interest of the trustee in and to five parcels of real property, including that covered by the contract in question, and also the right, title and interest of the trustee in and to the two deposits of $500.00 above referred to, subject to the rights of Kronisch, but the name of the purchaser is not stated in that finding—presumably it is one Klein, a clerk in a lawyer's office, who was acting as agent for the purchaser from the referee in foreclosure. It is not seen why that transaction complicates the question presented. The issue must be determined as between the trustee in bankruptcy and Kronisch, because the trustee could not create any greater rights in Klein than he himself possessed, since all that he sold was his right, title and interest; hence it is the determination of the latter which fixes the rights, if any, of Klein. If the trustee cannot prove default on the part of Kronisch, it must be apparent that his assignee is in no better position.

It may be doubted whether this kind of an issue should be disposed of in a summary proceeding (See Dreyer v. Perkins (C. C. A.) 217 F. 889) but the parties herein seem to have submitted to the jurisdiction of the referee, and there is no practical reason why the controversy should not be concluded in that guise; but the matter must be referred back to the referee in order that adequate and competent testimony may be offered as the basis of his ultimate findings, and careful consideration given to the legal duties which confronted the trustee with respect to the performance of the Kronisch contract.

Settle order on two days' notice.